■ In the Matter of HAROLD P. RUBIN, Petitioner, v LA VERNE E. CAMPBELL, as Regional Health Director of the New York State Department of Health, et al., Respondents.—Petition dismissed as moot, without costs. All concur except Schnepp, J., who dissents and votes to grant the petition in the following memorandum: By letter dated April 11, 1975 petitioner, a duly licensed podiatrist and a provider of professional services under the Medicaid program, was notified by Dr. George Cooper, Medical Director for the Erie County Department of Social Services, that petitioner would be afforded an opportunity to be heard concerning allegations which might affect his status as a Medicaid provider. The letter stated that a review of petitioner's Medicaid claims indicated a pattern of excessive treatments, diagnosis inaccuracies and improper billing practices. On April 23 and 26, petitioner appeared at "meetings" where Dr. Cooper and Dr. Fischman, podiatry consultant to the Erie County Department of Social Services, were in attendance. Subsequently, Fischman sent a report to Cooper, recommending that petitioner "be suspended as a vendor under the Medical Assistance Program of Erie County until such time as the quality of his services and accuracy of his billing records is verified". While noting that the petitioner claimed that "he had done no wrong", the report detailed petitioner's billing and treatment practices for six patients and stated that "the Department

investigation has revealed several irregularities on many, many patients". On April 30, 1975 Dr. Cooper wrote a memorandum reporting on the April meetings, which he characterized as "hearings", to the Erie County Health Commissioner and Social Services Commissioner, and asked for authorization permanently to disqualify petitioner from further participation in the Medicaid program based on a finding of "actual fraud" and "practices inconsistent with program regulations". Cooper's recommendations were adopted by the commissioners and on May 6, 1975 petitioner was notified that as of June 1, 1975 he was permanently disqualified from participating in the medical assistance program in Erie County and in the State of New York. Petitioner appealed the determination and a hearing was held before an appeal board appointed by the respondent Dr. Campbell, Regional Health Director of the New York State Department of Health. Although respondents abandoned their charge of "actual fraud", the appeal board after a five-day hearing recommended the suspension of petitioner as a medical provider for a period of two years beginning on June 1, 1975 and the subsequent review and approval of all his services as a medical provider for a consecutive term of three years beginning on June 1, 1977. The board identified as grounds for its recommendation petitioner's violation of "Item 35 of the New York State Medical Handbook" dated July 15, 1971. The handbook consists of regulations prepared by the New York State Department of Health applicable to the Medicaid program and defines "unacceptable practices". The appeal board findings and recommendations were accepted by respondent Campbell and incorporated in an order dated January 29, 1976. Petitioner commenced this article 78 proceeding to review this determination. By order of the Supreme Court the Erie County Department of Health was added as an indispensible party and the proceedings were transferred to this court for final determination. Petitioner's claim is not moot as urged by respondents. Although petitioner's two-year suspension has expired and podiatrists are presently excluded as Medicaid providers (Social Services Law, § 365-a, subd [4]), there remains the possibility that coverage for podiatrist's services may be mandated before the expiration of the three-year probation period. Furthermore, petitioner has a present interest in his good name and professional integrity. Respondents' findings, *inter alia,* of improper billing and failure to maintain minimum professional standards stigmatizes petitioner's reputation and adversely affects his livelihood *(Connell v Shoemaker, 555 F2d 483).* A live controversy exists, even though petitioner did not move to stay the suspension pending the disposition of this proceeding. Respondents' failure to file the handbook voids its administrative action. New York law provides that no rule or regulation made by any State department shall be effective until it is filed in the office of the Department of State (NY Const, art IV, § 8). The filing requirement gives notice to the public of the rules and regulations of State bureaus and provides a special place where their contents might be examined and scrutinized for their legality, effectiveness and accuracy *(People v Cull,* 10 NY2d 123, 128). Section 102 of the Executive Law directs that a certified copy of rules and regulations, like the handbook, be transmitted to the Secretary of State for their compilation. It is undisputed that this medical handbook was not filed with the Secretary of State. The failure to file the handbook undermines any legal effect of the regulation and prevents the respondents from proceeding pursuant to "Item 35" to disqualify the petitioner as a Medicaid provider *(People v Cull, supra).* Until its filing, neither petitioner nor others similarly situated could turn to any official source for guidance as to what acts would precipitate a charge of unaccepta-

ble practice and what their consequences would be. It is of no moment that the handbook was superceded by new regulations effective August 31, 1976 (18 NYCRR Part 515) which were filed with the Secretary of State on January 21, 1976—well after the commencement of administrative proceedings against petitioner. While the State may have the inherent power apart from any regulation to suspend payments or to initiate appropriate civil or criminal action for fraud or to recover State funds illegally or erroneously paid (see *Matter of Fahey v Whalen,* 84 Misc 2d 1040, affd 54 AD2d 1097; *Hurlbut v Whalen,* 58 AD2d 311, 318, mot for lv to app den 43 NY2d 643), it does not have the power to suspend or disqualify Medicaid providers without properly promulgated regulations establishing standards and procedures supporting its action *(Gonzalez v Freeman,* 334 F2d 570, 579; but see *Lang v Berger,* 427 F Supp 204). The determination of the respondents should be annulled. (Article 78 proceeding transferred by order of Erie Supreme Court.) Present—Moule, J. P., Cardamone, Simons, Hancock, Jr., and Schnepp, JJ.